Okay. I don't pronounce this cow letter. Coweta. Coweta. That's a good name.  Thank you. Well, I guess you're actually not a native, but you're married to one. You have to learn all the weird pronunciations. Yeah, it always happens. In my hometown, everyone thinks it's mobile. Okay. A.W. v. Coweta County School District. Mr. Ballard? May it please the court. My name is David Ballard, and I have the privilege of representing the appellant's children with profound physical and cognitive disabilities who, as elementary students, suffered profound verbal and emotional and physical abuse due to the indifference of the appellants in this case. And this case calls on the court to decide whether they have any meaningful remedies against these appellants. We should ask this court to find that they do and reverse the district court for three reasons. First, the overly broad dismissal below failed to even address the student's claim for damages that were unrelated to emotional distress, and these damages would have been available even under the Supreme Court's 2022 decision in Cummings. And, therefore, those damages should have been allowed. Second, the district court erred in finding emotional distress It seemed to me that the district court was right that emotional distress damages are unavailable, but the problem is requesting an improper remedy is not necessarily fatal to the claim. Well, Your Honor, I certainly like the last part of your explanation. I just don't see how we can get around Barnes and what we said in Ingram. And, I mean, it just seems to me to be quite clear that the remedies under Title II are the same remedies for the Rehab Act and Title VI, that these are mirror images. Your Honor, I think that's the biggest challenge for the appellants today. My answer to that is what was asserted in our briefs and was not really directly addressed in the Daugherty decision in the Second Amendment is what Congress knows when it enacted the ADA. The argument that we've advanced that we believe distinguishes this case from Barnes, that distinguishes it from your decision, Your Honor, in Ingram, is that we're dealing with compensatory damages and we're dealing them under the Fourteenth Amendment, but we're also dealing it with what Congress knew when it enacted the law. Yeah, but, I mean, the Supreme Court pretty clearly in Barnes said, look, it doesn't matter if it's spending clause legislation. The Americans with Disabilities Act could not be clearer. Its remedies are the same as those in the Rehab Act, which is spending clause legislation. I mean, but the other problem is that the district court was too quick then to just dismiss the claim because of the request for an improper remedy. It had to also consider whether other relief might be available for the claim, and it never considered that, it seemed to me. Yes, Your Honor. We've contended that we did plead that relief. I mean, we did. I mean, I've read your complaint and the proposed amended complaint. They both have general enough language for other relief. Thank you, Your Honor. And that would also distinguish it from Daugherty where the appellants in that case had waived the claims because there had been extensive discovery and they said that we didn't have the claims, so that would have been different here where we didn't even get to the point of exchanging initial disclosures. I mean, your complaint asks for other and further relief as it deems just and proper. It seems to me under our precedence that's enough. I agree, Your Honor. And we also plead for all other compensatory relief. But, Your Honor, beyond that, to the central question, though, as to whether the court should continue to apply 504's remedies to I-22, what we would contend is that in the past those decisions, whether it be Barnes v. Gorman or whether it dealt with other matters such as vicarious liability, don't go to the central question of compensatory damages. And we think that the logic of applying the two cases applies only so far as a tool of statutory interpretation, what did Congress intend. Our argument is that when Congress passed the ADA in 1990, it was aware of v. Canada v. City of Chicago. It was aware of the Cary decision as to Section 1983. It was aware that when there were broad-based remedies or when there was no remedy and really 504 is silent as to remedy because it cites Title VI, which is silent to remedy, that the law would afford all available relief. And the state of the law in 1990, as Congress knew it or at least understood it, would be that by having a silent remedy, it would allow all compensatory damages. And, of course, that's consistent with, to the extent we care about the legislative history, it's consistent with the idea of providing all remedies, which is what it was intended to do. It would also have been consistent with why Congress passed Title II in the first place, which was to expand upon the relief that would have been available under Section 504. And what Congress could not have known was that future limitations on spending clause legislation, especially under a contract theory, would apply to damages brought under Congress's enforcement under the 14th Amendment, especially. And that would be our distinction. I think it seems like those are good arguments maybe for the Supreme Court. But the Supreme Court has really linked these two things together, and we have too. And so it just seems like, you know, given what the Supreme Court has said about following the one act as applied to this one, we're just kind of stuck, right? This Court can always get it right, of course. A three-judge panel of this Court is more limited in what it can do. Well, there are a few points to what you just said, Mr. Chief Judge, and to you, Judge Brasher. First of all, of course, our view of Cummings is that it very clearly couched its limitation as to spending clause legislation. I think that's at 1527 as the Penn site. Barnes does not. Well, it's noteworthy of the judges in Perez v. Sturgis, the Supreme Court in 2023, was asked by the school district in that case to consider this very question, and it declined to do so. That doesn't necessarily mean what their ruling may be, but they had that opportunity and declined to do so. But they were very clear what they said in parts. I mean, that's the point we made in Ingram. I understand, Your Honor. My view is that that interpretation, as it might, Congress would have known when it enacted the ADA that there's concerns when it comes to punitive damages, as Justice Stevens understood in Newport, that there's longstanding policy reasons why we wouldn't want to have punitive damages imposed on government entities for the protection of the taxpayer. It would have been known that vicarious liability, as to your point, expands potentially putting the taxpayers on hook beyond what Congress would have thought. Just a moment ago, you were saying they wanted it to be broadly available remedies, right? That's completely inconsistent with what you were just saying a moment ago. They tended to be broad-race remedies as to compensatory damages to try to keep people whole, to try to remedy discrimination. Well, that would mean vicarious liability, too. Well, I would just contend, Your Honor, and I would state also other courts have cited your opinion, and the site escapes me, said there was also an independent statutory basis in Title II for having it separate. So it was not entirely based in the link between 504 and what appellants contend wholeheartedly is that when Congress linked 504 and Title VI and the ADA, it was their express intention to provide a broad-based remedies, and, in fact, that's what they said so in the legislative issue. Tell me this. Let's put emotional distress damages aside for the moment and assume the district court heard in failing to consider what other damages you might be entitled to. It seems to me the district court really ought to be the one to decide that in the first instance with respect to this complaint. But can you tell me enough to give me some comfort that that won't be just a futile exercise? Yes, Your Honor, this complaint at various places, as you've read, has discussed extensive psychological trauma that the kids have experienced. That's emotional distress. But also the need for compensatory damages in the nature of restitution, the need to make children whole in terms of what they've suffered in terms of What would that be beyond emotional distress? Do they have any medical bills? We contend that there will be medical bills and things of that nature below. We contend that there will be services that had to be rendered as a result of this. Obviously, the emotional distress was a significant part of it. Remedial education? Yes, Your Honor, we believe that would be part of it, benefit of the bargain, things of that nature. Can I get you to address the substantive due process clause claim? Because I'm having a difficult time understanding really what the nature of your claim is. So you're suing the principal, and it seems like there could be two theories, and maybe you're making both of those theories. But one theory, I think, against the principal would be that the teacher's conduct violated substantive due process, and the principal is liable as a supervisor. That's one theory. Deliberate indifference to the teacher's conduct. That's the way I understood it. Is that right? That's where we're finding the substantive due process violation. We're finding it as to the deliberate indifference as to extremely great risk of injury and things of that nature. So you're not alleging, then, that anything that the supervisor herself did constituted a substantive due process violation? No. She abused the children. She just turned a blind eye to these children being abused and to multiple reports of this abuse on numerous occasions. And your argument is that deliberate indifference is enough to satisfy shock to conscience? Yes, Your Honor. Well, no, I'm sorry. I'm sorry. I thought you just said that you weren't arguing that there was a substantive due process violation by the principal. We allege there was a substantive due process. And it's her deliberate indifference to the teacher's abuse. That's correct. Okay. Well, see, that seems to be a different theory than supervisor liability. Supervisor liability theory is that the subordinate violated someone's constitutional rights, and then the supervisor is liable for not fixing what the subordinate did or not supervising the subordinate to prevent the violation of constitutional rights. And I think that that is, in essence, part of the claim. It's not the really vicarious liability. It's the failure on the part of the supervisor to react. Right. It's the deliberate indifference by the supervisor to the conduct. And it was indicated as the final decision maker for a Monell liability, which was also an error that we contend with the district court as well. And the reason why this is important is because the shocks to conscience standard is what gives you the substantive due process violation. And so it's my understanding, and maybe I'm wrong, but it's my understanding that for supervisor liability, you have to show someone else violated the Constitution and then that the supervisor is somehow liable for it. If you're arguing that something the supervisor herself did violated the Constitution, then you would, in fact, need to show that whatever it was that she did shocked the conscience. Well, the teacher violated the substantive due process rights by throwing shoes at the children, striking the children, locking them into bathrooms. But the teacher is not the defendant. That's true, Your Honor. It's the superior who didn't read, who was deliberately indifferent to that, right? Exactly. That's the substantive due process violation that you have alleged. Isn't that right? That's correct. Yes, Your Honor. And she's the final decision maker from a Monell liability, had the ability to stop this abuse. And we believe that the district court also erred. That's a pleading question and we feel like the district court should have allowed that to go forward and made that a factual question. Okay. I have one more question.  Assuming that showing the deliberate indifference on the part of the principal is sufficient to show intentional discrimination, the students also have to show that the intentional discrimination was by reason of the disabilities. Have you made any allegations that the principal acted as she did deliberately indifferently on the basis of their disabilities? The allegation for the basis of the disability is that the only children who were abused were ones who suffered these disabilities and that they were denied the same educational opportunities as every other child who was not disabled and did not suffer abuse. But the deliberate indifference claim is a constitutional claim, right? It's not a disability claim. Correct. Well, but doesn't the statutory claim also have a deliberate indifference angle to it? Isn't it the same word but maybe different standards? It requires intentional discrimination that can be shown through deliberate indifference more or less.  Okay. Mr. Hill. Good morning, Your Honor. May it please the Court, this is a case of black letter law. When Congress passed Title II of the ADA, it wrote that the remedies under Title II of the ADA are the exact same as what you get under the Rehabilitation Act. So... Yeah, it seems to me the problem with that is, I totally agree with you about the unavailability of damages for mental, emotional distress, but that doesn't mean that there couldn't be other relief. Their complaint sought other relief. The district court, it seems to me, was obliged to consider the possibility of other forms of relief in support of that claim, other remedies, and its failure to do so means we have to vacate the dismissal and remand for that consideration. That's just black letter law to me. I'll explain why I agree, but they... There was a catch-all phrase of other relief deemed appropriate, but whether they sought anything beyond emotional distress, they did not raise that issue to the district court. They did not, you know, raise the issue of medical expenses like Mr. Fowler just mentioned. And one way that we know they didn't raise it is because the original complaint also had a Rehabilitation Act claim, and once we briefed the court in the initial motion to dismiss on the Cummings decision, the proposed amended complaint dropped the Rehabilitation Act claim because they admitted, the plaintiffs admitted, that they weren't seeking anything other than emotional distress damages, and their argument to the district court was that those form of damages still would be available under Title II of the ADA. So if, as they are arguing now, that they believe damages for medical expenses or any other form of compensatory damages should be available, those would have been available under the Rehabilitation Act, but they didn't raise that argument below. I guess I'm confused by that. You know, these complaints are not the best. In the proposed amended complaint, they ask for an award of damages for mental anguish and pain and suffering, physical harm, and other compensatory damages and relief under the ADA. So why isn't that, I mean, why is that enough? I mean, you're proceeding on the assumption that they have like a line in their complaint that just says all we want is, you know, emotional distress damages, and that's not what they say. Well, the mental and emotional distress, we just covered that. That is not available under the ADA. Pain and suffering, same thing, and we included that in our brief, but that's not available. Physical harm and other compensatory damages and relief? Right, physical harm, that's just saying pain and suffering. Well, it's the words that come after pain and suffering, though. It's mental anguish and pain and suffering, physical harm, and other compensatory damages and relief. Right, other compensatory damages and relief, but as far as like what that encompassed, they didn't raise that issue to the district court. And I would point out in this kind of case where you have a public school that's subject to the IDEA, one of the forms of damages Mr. Ballard mentioned was remedial education, and that would be something that would be available where you would have an administrative exhaustion requirement to seek that first under the IDEA, and that's from the Supreme Court's recent decision in Sturgis that if you're seeking any form of relief that you could get under the IDEA, then you have to exhaust administrative damages under that statute before trying to seek it under another statute like Title II of the ADA. As for the medical expenses, Cummings advises that the types of compensatory damages that would be available are the types that would generally flow from a breach of contract, and compensation for medical expenses is not the type of damages that would flow from a breach of contract, Your Honor, especially a contract between a student and a school. So what about, just to follow up on something that Chief Judge Pryor mentioned earlier, what about the idea that you usually don't dismiss a complaint, and in fact I think you're not supposed to dismiss a complaint on these issues of potential damages, that you dismiss a complaint when the allegations don't state a claim, but the damages are something that you just address later once you've ruled on the merits of the complaint? Well, the damages are an essential element of the claim, and it would be futile to allow a claim to go forward for damages that are unavailable anyway, and on the merits of the claim... Yeah, so here's what Rule 54C says, which it just, it says every final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings. So how is your theory that you have to demand a specific form of relief in your pleadings consistent with that? Well, that sentence from Rule 54, the first sentence is one talking about default judgments when you are limited to what's in the pleadings. Then that second sentence... Yeah, this is for non-default judgments, right? Right, right, when the court is issuing, you know, awarding relief in entering judgment, and by that point, if you've had a jury trial or a bench trial, you've had multiple things... That's my point, that's my point, but it seems like your theory would prevent the bench trial or the jury trial or whatever from happening because you would just look at the complaint, you would look at what kind of relief is requested in the complaint, and you would assess whether that relief is appropriate, and if it's not, you would dismiss the complaint. And this rule is saying even if you don't request the relief in the complaint, the court is still supposed to give it. Well, what I was trying to explain, what I was trying to articulate is that that sentence in Rule 54 is dealing with a different stage in the time of the case after the pleadings have been superseded by pretrial order, you know, findings of law and fact, et cetera. But you can also look at the Second Circuit case in Doherty v. Bice, which we cited in the supplemental authority. They considered this exact same argument where the appellants in that case also raised that the case should be remanded to consider other forms of relief, and the Second Circuit in that case said that the plaintiff cannot amend the complaint on appeal and can't argue, to paraphrase, cannot argue his way into a complaint that he did not present to the district court. So same thing here. These were issues that were not raised at the district courts. The district court didn't commit any error by not considering issues that the plaintiffs did not raise. Mr. Boyle. Well, we've said that a plaintiff might misconceive his remedy does not warrant dismissal unless he's entitled to, quote, no relief under any state of facts. That's been the law of the circuit for nearly 60 years. And it's not a no set of facts as to a claim. Twombly took care of that. This is with respect to a remedy where you have a claim. And it doesn't seem to me that Twombly affects that. This complaint sought any other relief that was just and proper. It seems to me we've got to send this back. This is Judge Batten, right, for Judge Batten to take a crack at it? It is Judge Batten, Your Honor, yes. Judge Batten needs to take a look and hash it out with the parties whether there's anything else here, whether these facts could entitle the plaintiffs to other forms of relief besides emotional distress damages, which are unavailable. I would also point, Your Honor, the Cummings decision in the Supreme Court, the Supreme Court did not take that view that you just expressed. They did not send it back. They just affirmed the dismissal. They didn't say anything about the issue I'm talking about. Because the issue was not raised to the courts below, and that is our argument here. It is raised here. It is raised here, but issues raised for the first time on appeal. I don't think it's raised for the first time on appeal when they pleaded other forms of relief. At this point, Your Honor, I respectfully disagree, but I think you understand where we're going. Yes, I understand. Can I ask you to address the substance of due process claim? Because I'm just having a hard time understanding what it is, honestly. Because it looks like, if you look at the appellant's brief, they have a section where they say, supervisory officials are liable under Section 1983 for the unconstitutional acts of their subordinates. That's their argument in their brief. But they also have parts in their brief where they're suggesting that something that the principal herself did was an unconstitutional act. So how do you understand what they're saying? First, I agree with you. It is somewhat confusing. My understanding of supervisory liability and what this Court has articulated in Mann v. Taser International, for example, is that supervisors can be personally liable when the supervisor personally participates in the alleged constitutional violation, which has not been alleged here, or when there is a causal connection between the actions of the supervisor and the alleged constitutional violation. And here, I'm not seeing that either, because all of the alleged abuse occurred before Dr. Hildebrand, the alleged supervisor here, received notice according to the complaint. Abuse happens in the classroom by the teacher. The claim is Dr. Hildebrand was deliberately indifferent to it. Right. My understanding of the claim is that she was deliberately indifferent after the paraprofessional reported the claim to her. Yeah, when she became aware of it, she was deliberately indifferent to it. That's the claim, which the question is, is that enough to constitute a violation of substantive due process? We've said in the school setting that deliberate indifference is not enough. Right, but in that case, though, and this is why I think it's important, in that case, there was no supervisor liability at issue. In that case, it was a third party that came in the school and shot somebody. And so the only constitutional violation that had existed at all would have been the government's failure to protect the students from that third party. Right. Here, it just seems like they're making a different argument, which I think you actually, I think we kind of agree about this. It seems like their argument is that what the teacher did shocked the conscience and violated the Constitution, and the supervisor is only liable to the extent there's some causal connection or something between her failure to supervise and those constitutional violations. Right, right. I understood their claim to be that the supervisor is liable for waiting 12 days to report the alleged abuse instead of complying with a Georgia state statute. Right, for exhibiting deliberate indifference to it, right? Correct, and I don't think that the amount of time changes the alleged failure to comply with a state criminal statute that it transforms it into a federal constitutional issue. Right. Yeah, so I mean the question, though, is is there, I mean, I think, is is there some causal connection between the constitutional violations that occurred in the classroom, if they were constitutional violations, and what the principal did? And I guess I would just ask you to address that. I mean, is there a causal connection such that you could say the principal is responsible for the activities that the teacher did in the classroom? I'm not, based on the allegations, I don't see any causal connection because anything before that would be just hiring the teacher, and I know there are allegations about the teacher wasn't properly qualified, etc. But that would not lead to any kind of reasonable foreseeability of the alleged abuse here. And during that 12-day period when she, you know, The complaint's alleging that the problem is what she didn't do. Right, but she did report it, though. The complaint does say that she did report it. Yeah, just late. Right, and I don't see that. Later than state law would have required. I mean, that's the allegation, right? No, I understand that, and my argument is that that amount of time doesn't turn this into a shocks of conscience into a constitutional sense of the term. But I guess that goes to the issue is if we're looking at this from the perspective of the supervisor's liability for an underlying constitutional violation, does the supervisor's response have to shock the conscience given that? I mean, we're just assuming for the sake of argument that what the teacher did shocks the conscience and is a constitutional violation. If that's the case, does what the principal did need to also meet that test? That's where I guess I'm having because that seems to be a different kind of argument. That argument, I think, is that who cares what the teacher did. The principal's action is what constitutes the shocks of conscience and substance of due process violation. I think that's right. I think there would have to be facts to show that the principal did something that shocks the conscience. And in here, even under the action of the student. And their theory is by failing to act, by being deliberately indifferent, the principal did. That's their theory. I understand that's their theory. Isn't it? I know, but I mean, that's it. That's all we've got, isn't it? I mean, I thought that's exactly what your adversary said a moment ago. That's the theory you're on. Where do you get the idea, though, in your response, that if what the teacher did violated the Constitution, that for the principal to be liable, the principal's actions would also have to violate the Constitution and meet the shocks of conscience standard? Because if we're talking about liability of the principal instead of the teacher, then I think we... Well, we started from the proposition where you gave me the right law on supervisor liability, which has to be a causal connection. You can have two things. You can either have the supervisor participating in the unconstitutional conduct, or you can have, like, an improper custom or something like that where the supervisor allows the unconstitutional conduct. At no point in supervisor liability do we say that you have to ask whether the supervisor itself violated the Constitution. Because if you did, then there wouldn't be any such thing as supervisor liability, right? So I guess that's... It seems like there are two separate theories here. One is, was there an underlying constitutional violation that the supervisor is liable for under supervisor liability? The other is, did the supervisor violate the Constitution in and of itself? Are those separate or are those the same, I guess? It seems like you're saying they're the same now. I think there's different ways that a claim could be articulated. My understanding of it was that if we were talking about... If we're talking about supervisory liability, then there has to be either personal participation by the supervisor or a causal connection. And this complaint doesn't allege personal participation in the misconduct in the classroom, correct? Correct. Yes. So it would only be causal connection. It would only be causal connection. I think, Chief Judge Pryor, you were saying that the theory of the causal connection would be deliberate indifference, right? That's the way I understand it. I'm just reading the complaint in their brief and listening to their argument this morning. That's it. That's the sum and substance of it as I understand it. But for causal connection, you wouldn't have to also show a shock to conscience. I guess that's where I'm trying to figure out why you would import the constitutional standard into the causal connection. I'm not actually positive on that answer, Your Honor. I know I've seen cases talking about the causal connection where they'll use the word deliberate indifference, but we know that that's not going to be, that's not going to apply in the public school noncustodial context. Well, I mean, the supervisor liability applies to all constitutional violations. It's not just substantive due process. The same standard applies to all constitutional violations or supervisor liability for constitutional violations, right? Right. As far as your specific question of whether shock to conscience by the supervisor, whether the supervisor's activity has to shock the conscience in order to establish a causal connection, honestly, I don't have an answer for you. I'm not positive on that. Okay, Mr. Hill, we've gone well over, but you've been answering our questions. Mr. Ballard, you've saved four minutes. Mr. Ballard, just let's get straight to the point. Your theory of liability for the principal is that she was deliberately indifferent to the terrible misconduct that happened in the classroom, right? That's right. That's it. It's not a separate supervisory authority. It's just that. She should have done some more sooner. Isn't that right? That's correct. And we believe that had to be distinguished from other cases such as Nick's because in Nick's, the court left a point. You don't contend that the principal was personally participating. It was that she was deliberately indifferent to it. That's correct, Your Honor. That's correct. And so in that case, you don't contend that the principal did anything to violate the Constitution herself. It was the failure to remedy the constitutional violations that were occurring by the teacher. That's a good question, Your Honor. As I understand your argument, your argument is by failing to act, that is an independent constitutional violation. That's correct, Your Honor. That's what we're alleging. Okay, well then how is it that that shocks the conscience? How is it that what the teacher, I'm sorry, what the principal did shocks the conscience? How would that meet the standard? Because I understand how the teacher could arguably meet the standard. I don't understand how the principal could arguably meet the standard. Well, I was going to say a deliberate indifference or it's suggested in the L.S. case that a deliberate indifference No, no, no. So deliberate indifference to constitutional violations, that could be supervisor liability, right? But if you're saying that what the principal did herself meets the shocks the conscience standard and in and of itself is a substance and due process violation, my question to you is how is failure to reporting something and hiring a bad teacher, how does that shock the conscience? It shocks the conscience because it ignored a great risk of injury, which was what was stated under L.S. It's an extremely great risk of injury when you've got students who have profound physical and cognitive disabilities who are prone to seizures, who have, in the record, all of these various medical issues. To turn a blind eye to that is what shocks the conscience. And then to allow day after day after day after day to pass and to do absolutely nothing with this information. And I remind the Court, the only reason this ever came to light at all. Let me ask you a question. You know, in Waddell, we said we left open the question whether a substantive due process claim in the non-custodial setting could occur with some form of deliberate indifference. But it would at the very least require a showing of deliberate indifference to an extremely great risk of serious injury. To the extent that we've left it open, that's it, right? Yes, Your Honor. And that is, in fact, not deliberate indifference. That's something else. Your Honor, what I would ask is we're at the pleading stage and the only information we have about what happened in that classroom was a paraprofessional who blew the whistle. We have a paraprofessional who, against her own interest, incurring a criminal charge in the process, stepped forward and said this is happening and we need to have relief. I mean, it just seems to me that we've been playing games with deliberate indifference over the years. I mean, the question is whether the conduct or failure to act shocks the conscience, period. That's the standard. And to the extent that we're trying to suggest that deliberate indifference is the standard, that's just not the case. I mean, we've rejected it in a school setting. If you want to satisfy it, you're just going to have to we need to talk about whether the conduct shocks the conscience. And I think that's what distinguishes it, Your Honor, from NICS, where you had a neurotypical teenager who was the victim in that case. It also distinguishes it from the LS case where there was no time for deliberation. Here you had very vulnerable children and you also had a situation where the principal had sufficient time for deliberation and that sets it apart from previous precedent. Okay. Thank you, Mr. Ballard. I think we understand your case.